LINKOWSKI, APPELLEE, v. GENERAL TIRE & RUBBER COMPANY, APPELLEE; U. S. FIDELITY & GUARANTY COMPANY ET AL., APPELLANTS.

[Cite as Linkowski v. General Tire Co. (1977), 53 Ohio App. 2d 56.]

(No. 8276—Decided March 2, 1977.)

*Mr. Timothy F. Scanlon,* for appellee General Tire & Rubber Company.

*Mr. William Ferguson* and *Mr. John M. Cronquist,* for appellants.

BELL, J. This cause by Mitchell Piping, Inc. and United States Fidelity & Guaranty Company, third party defendants-appellants (hereinafter Mitchell and U. S. F. & G.), is on appeal from a judgment order filed on September 22, 1976, by the Court of Common Pleas of Summit County, granting declaratory relief. The action was based on the

wrongful death of Michael Linkowski. The suit alleged that the negligence of the General Tire & Rubber Company, defendant-third party plaintiff-appellee (hereinafter General), caused the death of the decedent.

Prior to Linkowski's death, Mitchell entered into a contract with General to construct and install a certain piping system at General's chemical plant in Mogadore, Ohio. As part of the consideration for receiving the contract, Mitchell was required, as a condition precedent, to provide General with an indemnity agreement and a certificate of insurance. The indemnity agreement, insured by U. S. F. & G., was entered into by Mitchell and was effective from April 3, 1973, to April 3, 1976. The agreement provided:

"The Contractor [Mitchell] shall indemnify Owner [General] and save it harmless from damage to Owner's property and from all claims and judgments for injury or death to persons or property damage (including costs of litigation and attorney's fees) made or obtained against Owner by third persons including Owner's and Contractor's employees and agents, based on injuries to person or property, in any manner caused by, incident to, connected with, resulting or arising from the performance of this contract or of the presence of Contractor's employees and/or agents on Owner's premises, regardless of whether such claims are alleged to be caused by negligence, or otherwise, on the part of the Owner or its employees, but the Contractor will not be responsible for loss, damage or injury, including death, caused by the sole negligence of the Owner or its employees, excepting however, injury to or death of employees of the Contractor, from any cause whatsoever. * * * "

On November 13, 1974, Michael Linkowski, an employee of Mitchell, was performing the contract work. While performing his duties, he was killed. On January 27, 1976, the parties stipulated that the sole cause of Linkowski's death was General's negligence.

After the death of Linkowski, General requested Mitchell and U. S. F. & G. to either defend or settle the claim

presented by his estate in accordance with the indemnity agreement. They refused and on March 25, 1975, General filed a third-party complaint for a declaratory judgment concerning the indemnity agreement.

R. C. 2305.31, making indemnity agreements void as a matter of public policy, became effective on November 19, 1975, and provides:

"A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance, and appliance, including demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee its independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees or indemnitees is against public policy and is void. Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the state of Ohio for his own protection or from purchasing a construction bond."

After the stipulation of negligence, referred to above, U. S. F. & G. settled the Linkowski death claim for $350,-000, but reserved the right to argue its obligation under the indemnity agreement and R. C. 2305.31. On this issue, the trial court upheld General's claim under the indemnification agreement since the application of R. C. 2305.31 urged by U. S. F. & G. gave retroactive effect to that statute.

The appellants filed the following assignments of error:

"1. The court below erred in finding that Section 2305.-31, *Ohio Revised Code*, did not affect or apply to the indemnity agreement between The General Tire & Rubber Company and Mitchell Piping, Inc.

"2. The court below erred in finding that Mitchell Piping, Inc., and/or its insurer, United States Fidelity & Guaranty Company, were obligated to:

"a) indemnify and hold harmless The General Tire & Rubber Company;

"b) defendant The General Tire & Rubber Company;

"c) pay the proceeds of the settlement of Three Hundred Fifty Thousand Dollars ($350,000.00); and

"d) pay the attorney fees incurred by The General Tire & Rubber Company.

"3. The court below erred in finding for The General Tire & Rubber Company on its Third-Party Complaint."

*Assignment of Error 1*

The assignments of error require this court to interpret R. C. 2305.31, specifically as it relates to the indemnity contract under scrutiny in the instant case. The argument of each party raises the question of the retroactive or prospective effect of R. C. 2305.31.

Section 28, Article II, of the Ohio Constitution provides:

"The General Assembly shall have no power to pass retroactive laws or laws impairing the obligations of contracts."

R. C. 1.48 states:

"A statute is presumed to be prospective in its operation unless expressly made retroactive."

We must presume, therefore, that the legislature intended to give a constitutionally prospective effect to R. C. 2305.31, rather than unconstitutional retroactivity.

The appellants argue that the obligations imposed upon them by the indemnity agreement did not accrue or vest until after the effective date of R. C. 2305.31—to wit, November 19, 1975. They say that, under the terms of the contract, they had no legal duty until liability was established or a settlement reached in the instant case. This was done in January 1976, some two months after the birth of the statute in question. Carried to its logical conclusion, appellants' argument results in eliminating Mitchell's duty to indemnify General since such an argument incorporates a prospective meaning of the statute.

We believe such an interpretation is not proper in the instant case.

Under the terms of the agreement, Mitchell's obligations extend beyond the mere payment of judgments. The wording of the agreement provides that Mitchell indemnify General "and save it harmless from *all claims* and judgments (for injury or death to persons) *made* or obtained against [General] * * *." Thus, we see that appellants' obligations and General's rights are, in fact, "triggered" prior to any establishment of liability or a liquidation of damages.

Clearly, a claim was finally made by Linkowski's estate against General prior to the effective date of R. C. 2305.31. At the time that claim was filed, indemnity agreements of the type involved here were valid and were not against public policy. 28 Ohio Jurisprudence 2d 307, Indemnity, Section 5.

The indemnity contract involved substantive rights for all of the parties involved. The terms of that agreement give the respective parties the right to sue or to defend actions at law dependent upon this factual circumstance arising. Section 28, Article II, of the Ohio Constitution prohibits the use of legislative power to pass retroactive laws affecting the substantive rights of the parties. *Smith* v. *New York Central R. R. Co.*, (1930), 122 Ohio St. 45.

Speaking for this court in *General Industries Co.* v. *Jones* (1950), 89 Ohio App. 43, 44, Judge Stevens said:

"Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective * * *."

We believe that to impress the terms of R. C. 2305.31 upon the indemnity agreement in such a way as to result in releasing the appellants from their duty thereunder would be erroneous. The appellants' duty was to indemnify General regarding claims and judgments against the latter. To indemnify means simply that the responsibility for payments of damages for claims made against Gener-

al arose at the time of the making of a formal claim and not only when a judgment or settlement had been arrived at.

We find no Ohio cases concerning the issue raised in this assignment, but there are cases from other jurisdictions. The majority of these cases holds that the terms of indemnity agreements (if not void as against public policy when made), entered into prior to the enactment of such statutes as R. C. 2305.31, are not to be invalidated by the enactment of that new legislation. See, *Southern Railway Co.* v. *Insurance Co.* (1971), 228 Ga. 23, 183 S. E. 2d 912; *White* v. *Morris Handler Co.* (1972), 7 Ill. App. 3d 199, 287 N. E. 2d 203. In these cases, the courts have consistently held that the statutes, similar in context to our own, must be applied prospectively and not retroactively.

*Southern Railway, supra,* involves an indemnity agreement signed in 1964, an accident occurring in 1966 and a statutory enactment (similar to Ohio's) passed in 1970. Reversing the trial court, which found the agreement void, the Supreme Court of Georgia held at 27, 183 S. E. 2d 915:

"The indemnification covenant was not the only covenant of the contract, but it was one of its substantial obligations. The ruling of the trial judge that the indemnification covenant is unenforceable because of the 1970 amendment to Code §20-504 substantially impairs the obligations of the contract, and gives the amendment retroactive effect in the legal sense."

The passage of statutes such as R. C. 2305.31 voices a public policy position. Prior agreements, however, should not be held to new policy standards if those "standards" give retroactive effect to the statute itself. *Whitmire* v. *H. K. Ferguson Co.* (1968), 261 Cal. App. 2d 594, 68 Cal. Rptr. 78, considers this area. Headnote 4, of 68 Cal. Rptr., states:

"If contract conforms to public policy of state *when made,* subsequent change in public policy will not nullify contract." (Emphasis added.)

We hold that (1) the duty of Mitchell (and, therefore, its insurer) to indemnify General was created by the in-

62

demnity agreement; (2) that agreement was valid as to public policy when made; and (3) Mitchell's obligations under that agreement were incurred prior to the effective date of R. C. 2305.31. To apply the policy enunciated in R. C. 2305.31 to the indemnity agreement entered into before the enactment of that statute amounts to giving it retroactive effect, which is prohibited by Section 28, Article II, of the Ohio Constitution. We find no merit in assignment of error 1.

### Assignment of Error 2

In determining the obligation of Mitchell and U. S. F. & G., the indemnity agreement must be strictly construed and any ambiguity must be decided against the indemnitee. *Valerio* v. *R. & R. Construction Co.* (1974), 20 Ill. App. 3d 48, 312 N. E. 2d 713.

The language of the present agreement indicates that Mitchell was obligated to General:

(1) to indemnify it and hold it harmless;

(2) to pay the proceeds of the settlement of three hundred fifty thousand dollars;

(3) to pay attorney fees.

However, the duty of Mitchell to pay attorney fees does not include the initial obligation to defend in such a situation. The trial court's finding that Mitchell had the duty to defend General was outside the realm of the agreement, but does not constitute prejudicial error. The wrongful death action was settled and the duty to defend became a nonexistent obligation of Mitchell.

### Assignment of Error 3

The issues raised in the first two assignments of error constituted the basis for the declaratory relief granted General. We, therefore, overrule all assignments of error and affirm the judgment.

*Judgment affirmed.*

VICTOR, P. J., and COOK, J., concur.

COOK, J., of the Eleventh Appellate District, sitting by designation in the Ninth Appellate District.